## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**THOMAS ALLOTEY**
1309 Bayard Street
Baltimore, MD 21230

and

**CAIA WEAVER**
1309 Bayard Street
Baltimore, MD 21230

      *Plaintiff*,

      v.

**BALTIMORE COUNTY,
MARYLAND**

Serve:  James R. Benjamin Jr., Esq.
        County Attorney
        Historic Courthouse
        100 Washington Avenue
        Towson, MD 21204

and

**OFFICER S. BECKETTS, #5748**
*Individually and in his Official Capacity
as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

and

**OFFICER RUIZ, #5929**
*Individually and in her Official Capacity
as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

and

**OFFICER WHITE, #5989**

**\* Jury Trial Demanded**

Civil Case No. _____

*Individually and in their Official Capacity*
*as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

and

**OFFICER G. WADE, #5677**
*Individually and in their Official Capacity*
*as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

and

**OFFICER Z-HENSLEY, #5960**
*Individually and in their Official Capacity*
*as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

and

**OFFICER A. PEARSON**
*Individually and in their Official Capacity*
*as a Baltimore County Police Officer*
6424 Windsor Mill Road
Gwynn Oak, MD 21207

*Defendants*

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, Thomas Allotey and Caia Weaver, by and through

undersigned counsel, and Hansel Law, PC, and sue Defendants, Baltimore County, Maryland,

Officer S. Becketts # 5748, Officer Ruiz #5929, Officer White #5989, Officer G. Wade #5677,

Officer Z-Hensley #5960, and Officer A. Pearson, and as cause therefore states the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Honorable Court under 28 U.S.C. Code § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States. Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law, by virtue of 28 U.S.C. § 1367.

2.      Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are domiciled in Maryland, or organized under Maryland law, and the events at issue took place in Baltimore County, Maryland.

3.      Plaintiffs timely filed a proper notice under the Local Government Tort Claims Act, Section 5-301 *et seq*. of the Courts and Judicial Proceedings Article and is in full compliance with said Act. Plaintiffs have fully complied with all conditions precedent to filing suit.

4.      The Complaint was filed within three years of the cause of action.

## PARTIES

5.      Plaintiff Thomas Allotey was, and at all time relevant to the occurrence complained of herein, and adult resident of Baltimore County.

6.      Plaintiff Caia Weaver was, and at all time relevant to the occurrence complained of herein, and adult resident of Baltimore County.

7.      Defendant Baltimore County, Maryland is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution.  At all times mentioned, Baltimore County employed the individual Defendants, Officer S. Becketts, Officer Ruiz, Officer White, Officer Wade, Officer Z-Hensley, and Officer Pearson as patrol officers.

8.      Defendant Officer S. Becketts #5748 ("Officer Becketts") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer Becketts is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a Baltimore County police officer.  At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department.  As such, he was acting under the authority and color of state law at all times relevant hereto.

9.      Defendant Officer Ruiz #5929 ("Officer Ruiz") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer Ruiz is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in her individual capacity and/or in her official capacity as a Baltimore County police officer.  At all times relevant she was employed and engaged in an occupation with the Baltimore County Police Department.  As such, she was acting under the authority and color of state law at all times relevant hereto.

10.     Defendant Officer White #5989 ("Officer White") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer White is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a Baltimore County police officer.  At all times relevant he was employed and engaged in an occupation with the Baltimore County Police

4

Department.  As such, he was acting under the authority and color of state law at all times relevant hereto.

11.     Defendant Officer G. Wade, #5677 ("Officer Wade") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer Wade is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a Baltimore County police officer.  At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department.  As such, he was acting under the authority and color of state law at all times relevant hereto.

12.     Defendant Officer Z-Hensley, #5960 ("Officer Z-Hensley") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer Z-Hensley is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a Baltimore County police officer.  At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department.  As such, he was acting under the authority and color of state law at all times relevant hereto.

13.     Defendant Officer A. Pearson ("Officer Pearson") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County.  Officer Pearson is, and was at all times relevant to the occurrence complained of herein, employed by the Baltimore County Police Department as a patrol officer, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as a Baltimore County police

officer.  At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department.  As such, he was acting under the authority and color of state law at all times relevant hereto.

## FACTS COMMON TO ALL COUNTS

14.     On or about February 9, 2019, at approximately 3:00 p.m., Plaintiffs Thomas Allotey **("Mr. Allotey")** along with his now fiancé, Caia Weaver **("Ms. Weaver")** and her three young children, aged 7 and 2-year old twins, began moving in to their new home located at 2536 Cheshaire Drive, Gwynn Oak, MD 21244.

15.     The family was elated to be moving into their new home.

16.     Around 5:00 pm, after moving in the children's beds, and several bags and boxes, Plaintiffs were informed by the leasing office that the carpet installation company was scheduled to complete the installation by the end of the day.

17.     Mr. Allotey and his family left the home to go to the mall and a restaurant for dinner.  The family returned home around 8:00 p.m.  They turned on the upstairs lights, and began getting the children ready for bed.

18.     Approximately 20 minutes after entering the home, Plaintiffs heard police sirens in the distance.  A few seconds later, they saw red and blue police lights reflected in their windows.

19.     This was Plaintiffs' first night in the home and they were concerned about the presence of police officers in the neighborhood.  They were under the impression that it was an objectively safe neighborhood and questioned what could be happening.

20.     Unbeknownst to Plaintiffs, their downstairs neighbor, Ms. Ajovane Caba, reported a possible break-in at Plaintiffs address.

21.     Officer Becketts' body camera footage shows Ms. Caba speaking to Officer Ruiz. Ms. Caba tells Officer Ruiz that she believes someone broke into the home.  Immediately after, Ms. Caba stated that earlier that same day, she saw carpet being installed in the home.  This information was shared with all defendant officers.

22.     To a reasonable person, this would signify that the home was being prepared for new occupants.

23.     Instead of gathering additional information, Officer Becketts interrupted the conversation to glean information about alternate entrances and egresses to the home.

24.     Ms. Weaver approached the window and observed at least 3 officers walking towards their home with at least 1 having his weapon out of his holster.  Neither she, nor Mr. Allotey, knew why the officers were approaching the home and suspected that the they had come to the wrong address.

25.     Ms. Weaver then walked to the door in order to open it for the officers.

26.     Out of concern for the safety of Ms. Weaver and the children, Mr. Allotey insisted on opening the door himself.

27.     As soon as Mr. Allotey opened the door, Ms. Weaver put her hands in the air. Plaintiffs were startled by the officer's presence but also the unnecessarily aggressive tone with which they were confronted.

28.     Officer Becketts immediately yelled "Get the fuck on the ground now!"  to which Mr. Allotey responded "We just moved in!" Neither occupant posed any threat to the Officer that would have warranted such aggressive treatment.

29.     Without any lawful justification, Officer Becketts then grabbed Mr. Allotey by the arm, pulled him outside, and did the same to Ms. Weaver.  During this time, Mr. Allotey

7

repeated "We just moved in" at least three more times.  Officers had no objective evidence or indication that the husband and wife did not belong in the home or that force was necessary.

30.     Mr. Allotey told the officers no less than 3 times that they just moved in.  They could have easily provided a copy of the lease had any of the officers requested it.

31.     The body camera footage also shows a small child coming from the back of the house as their parents are being dragged outside.  Any reasonable suspicion or probable cause to believe a crime was being committed was destroyed when police observed the presence in the home of a small child, especially given the presence of a male and female of appropriate age to be the child's parents, the fact that the adults were explaining that they had just moved in, and the knowledge that carpet installers had been working there earlier in the day.

32.     Mr. Allotey is then heard saying "Don't twist her arm" multiple times before he is unnecessarily pushed backwards by Officer Becketts off of his front step. During this period of time an officer was twisting Ms. Weaver's arm unnecessarily and excessively.

33.     Without legal excuse or justification, at least 2 of the Defendant officers grabbed Mr. Allotey after he had been pushed, causing him to stumble off the step. As Mr. Allotey's hands were being forced behind his back and he was being falsely arrested, Officer Becketts unreasonably and unjustifiably deployed mace in his face and the officers forcibly took him down to the ground with unreasonably and unjustified force.  Mr. Allotey can be heard choking and coughing on Officer Beckett's body camera footage.

34.     All three children had since come to the doorway and witnessed their father-figure being assaulted by the officers.  The presence of additional children further illustrated that this was a family moving in and not a break-in or other crime in progress.

35.     At this time, Officer Ruiz and another Defendant officer who is African-American, at least 6'2", and approximately 200 lbs., used unreasonable force in piling on Mr. Allotey's back, placing their full weight on him as he was defenselessly on the ground.

36.     Mr. Allotey reflexively reached his arm up to wipe his face because the mace was burning his eyes and the officers maced him a second time without legal cause or justification. Mr. Allotay, fearing for his life, then called for Ms. Weaver to start recording.

37.     The Defendant officers responded by violently and excessively slamming Mr. Allotey's face into the ground without legal justification more than once, which can be seen in video.

38.     Officer Beckett then punched Mr. Allotey about the head and neck at least three times with a closed fist unreasonably and without legal justification. This is also seen on the body camera video.

39.     In a display of grossly excessive force, Officer Becketts also kicked Mr. Allotey in the head causing him to lose consciousness for a few seconds.

40.     Ms. Weaver can be heard in the background of the bodycam footage frantically screaming "Why is he hitting him?"

41.     As a natural reaction, Mr. Allotey covered his head and neck with his arms, and attempted to curl into a ball in order to avoid any further injury. Mr. Allotey took no conscious actions to resist his unlawful arrest or refuse any commands.

42.     Officer Becketts continued to unlawfully hit Mr. Allotey in the face with a closed fist while simultaneously telling him to put his hands behind his back. To comply with the officer's instructions would have been categorically impossible considering he was still actively being assaulted by the same officer.

43.     For the duration of the beating, Mr. Allotey feared for his own safety but also the safety of his girlfriend and the children.

44.     Mr. Allotey suffered abrasions on his right temple and had significant swelling in his left cheek and jaw area.

45.     Mr. Allotey was taken to Baltimore County Detention Center, falsely charged with 2nd degree assault on an officer, and held for approximately 24 hours.  Mr. Allotey did not assault anyone and the officers were all well aware of this fact.

46.     After being released, Mr. Allotey went to Northwest Hospital where he was diagnosed with a second-degree atrioventricular block and a sprained wrist.

47.     Mr. Allotey was falsely arrested and illegally detained by the Defendants until approximately 1:00 pm the next day.

48.     Mr. Allotey was falsely charged by the Defendants with second-degree assault, failure to obey, and resisting arrest.  The charges carry a combined sentence of a little over 13 years in prison and/or up to $8,000 in fines.

49.     Thereafter, Mr. Allotey was maliciously prosecuted for these crimes, which he did not commit, by the officers.  The malicious prosecution terminated in Mr. Allotey's favor when charges were entered *nolle prosequi*.  Each individual Defendant officer participated in preparing the paperwork to initiate false criminal charges and continue the prosecution against Mr. Allotey.

50.     As a result of this incident, Mr. Allotey has suffered, and continues to suffer, significant mental and physical pain and anguish, other non-economic damages and pecuniary injuries.  Ms. Weaver suffered, and continues to suffer, emotional distress.  Both Plaintiffs have suffered and continue to suffer from emotional and physical stress, loss of sleep, loss of appetite, headaches, rapid heartbeat, upset stomach and other physical manifestations of stress.

51.     At all times relevant hereto, Defendants alternatively acted with actual or implied malice, intentionally, grossly negligently and/or negligently.

52.     At all times relevant hereto, Defendants acted without legal justification or excuse.

53.     At all times relevant hereto, Defendants acted under color and pretense of law, and under color of statutes, customs, and usages of the State of Maryland.

54.     At all times relevant hereto, Defendants acted within the scope of their employment.

55.     At no time did the Plaintiffs cause or contribute to their injuries.

56.     Plaintiffs further alleges that all of their injuries, losses and damages – past, present, and prospective – were caused solely by the actions of Defendants, as set forth above, without any negligence, want of due care, or provocation on the part of Plaintiffs, either directly or indirectly.

### Count I (42 USC 1983 – 4th & 14th Amendment Excessive Force)
### Versus the Individual Defendants

57.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

58.     Defendants Becketts, Ruiz, White, Wade, Z-Hensley and Pearson deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments of the United States Constitution, namely freedom from summary punishment and excessive and unreasonable force.

59.     At all times relevant hereto, Defendants Becketts, Ruiz, White, Wade, Z-Hensley and Pearson deliberately subjected Plaintiffs to the deprivation of their rights with actual or implied malice, using unreasonable and unnecessary force in the treatment of Mr. Allotey and

Ms. Weaver.  This treatment violated the Plaintiffs' rights to be free from summary punishment as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

60.     Mr. Allotey sustained physical injuries as a direct and proximate result of the Defendant Officers' assault on him, as well as consciously experienced pain and suffering, humiliation, and embarrassment, all to his detriment.  Ms. Weaver experienced pain, discomfort and the resulting mental pain and suffering.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count II (42 USC 1983 – 4th & 14th Amendment Malicious Prosecution) Versus the Individual Defendants

61.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

62.     Officer Becketts as well as the other defendant officers initiated and continued a criminal proceeding against Mr. Allotey without proper justification.

63.     The officers knew that Mr. Allotey did not commit second degree assault, did not fail to obey a lawful order, and did not interfere with his arrest.

64.     Mr. Allotey attempted to protect Ms. Weaver by demanding that Officer Becketts stop grabbing her arm.  At no time did he assault or cause any bodily harm to any of the officers.

65.     It was not lawful for the officers to remove Mr. Allotey and Ms. Weaver from their own home without probable cause or legal justification.

66.     Mr. Allotey did not interfere with or resist arrest.  He was sprayed in the face with mace twice, punched, and kicked by the officers.  Mr. Allotey tried to use his hands to cover his head, face, and neck.

67.     The Office of the State's Attorney declined to prosecute.

68.     In violation of the 4th & 14th Amendments of the United States Constitution, there was no probable cause for the Plaintiff's arrest, detention or the criminal case against him as stated otherwise herein.

69.     The prosecution of the Plaintiff in the criminal case was undertaken for a purpose other than bringing the Plaintiff to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.  Mr. Allotey was not burglarizing his own home and he did not assault or attempt to assault the officers.

70.     The Defendants caused the criminal prosecution of the Plaintiff by falsely asserting that he had committed various crimes the defendants knew that the Plaintiff did not commit.

71.     The Defendants' actions constituted malicious prosecution and violated the 4th and 14th Amendments of the United States Constitution.

72.     The aforesaid acts of the defendants were undertaken deliberately.

73.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiffs were caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages

from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiffs.

74.     All of the Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

**Count III (42 USC 1983 – 4th Amendment False Arrest & False Imprisonment)**
**Versus the Individual Defendants**

75.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

76.     Defendants Becketts, Ruiz, White, Wade, Z-Hensley and Pearson at all relevant times hereto, acted under color of State law in unlawfully entering and removing the Plaintiffs from their residence, seizing and arresting the Plaintiffs in the process.  Defendants deprived Plaintiffs Thomas Allotey and Caia Weaver of their rights under the Fourth Amendment of the United States Constitution, namely freedom from unreasonable search and seizure and arrest without probable cause.

77.     At all times relevant hereto, Defendants Becketts, Ruiz, White, Wade, Z-Hensley and Pearson deliberately subjected the Plaintiffs to the deprivation of their rights by seizing Mr. Allotey and Ms. Weaver and removing both from their home and arresting Mr. Allotey without

14

reasonable suspicion or probable cause to do so, thereby injuring the Plaintiffs and depriving them of their liberty.  This treatment violated Plaintiffs' right to be free from unreasonable search and seizure and arrest without probable cause as protected by the Fourth Amendment to the United States Constitution.

78.     Mr. Allotey and Ms. Weaver were falsely arrested and imprisoned in that both were forcibly removed from their home and prevented from returning or otherwise going about their business for an unreasonable period under the circumstances.  Mr. Allotey was further falsely arrested and imprisoned when he was taken from the immediate vicinity of his home, criminally charged and jailed based on false charges.

79.     Mr. Allotey and Ms. Weaver sustained damages as a direct and proximate result of the unlawful search, seizure, false arrest and false imprisonment, as well as consciously experienced pain and suffering, humiliation, and embarrassment, all to their detriment.

80.     The complaining witness, Ms. Caba, informed Officer Ruiz that she saw carpet being installed in the home earlier that day.

81.     Officer Becketts was aware of this information before he positioned himself at the front door of Plaintiffs' home with his service weapon unholstered.

82.     A reasonable person in the officers' position would have realized that a new family had moved in to the unit, or, at the very least, that there was no probable cause or reasonable suspicion to believe a crime had been or was being committed.

83.     Additionally, Mr. Allotey and Ms. Weaver told the officers no less than five times that they had previously moved in to the home that day and the presence of their children made it evident that they were telling the truth, as did the totality of the circumstances, including the fact that the couple were appropriate ages to be parenting the children, there was no sign or physical

evidence of a break-in, the couple came to the door immediately and opened it for officers, and the fact that officers had been told that carpet was being installed earlier that day.  Instead of asking the Plaintiffs for a copy of their lease, which they would have readily provided, the officers physically removed Mr. Allotey and Ms. Weaver from the home.

84.     The Defendant officers interfered with Mr. Allotey and Ms. Weaver's possessory property rights by physically removing them from the home without cause.  Plaintiffs had a reasonable belief that they were not free to reenter their home.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count IV (*Monell* Claim  – 4th & 14th Amendment Excessive Force) <u>Versus Baltimore County</u>

85.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

86.     Defendant Baltimore County failed to adequately train, supervise, and discipline its officers against the use of excessive force and against arrest and imprisonment without probable cause.  The failure to properly train, supervise, and discipline officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to Mr. Allotey and Ms. Weaver.

87.     Baltimore County has also instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to use excessive force, to arrest without probable cause, and otherwise violate citizens' constitutional rights.

88.     Arrest without probable cause and the use of excessive force occurs so frequently that it has become accepted manner by the Defendants and other employees of Baltimore County.  This is a result of Baltimore County's failure to establish effective procedures, rules, orders, guidelines and practices to ensure that excessive force will not be used and to ensure that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred.  As a result of this failure, there has been a regular pattern and practice of excessive force, failure to provide adequate medical care, cover-up, and failure to investigate. This pattern and practice has been manifested in other prior incidents involving county officers.

89.     The violation of citizen's constitutional rights to due process and equal protection of the laws occurs so frequently at the hands of the Defendant County and its employees and is a result of the County's failure to properly train its employees and to establish effective procedures, rules, orders, guidelines and practices to ensure that such violations will not be used and to ensure that allegations of constitutional violations be thoroughly investigated and appropriately punished when found to have occurred.

90.     Baltimore County has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

91.     Baltimore County lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior.

92.     On or about December 19, 2015, Zachary Blumstein became involved in a verbal altercation outside of the Green Turtle Restaurant in Towson, MD.  A man who didn't identify himself as a police officer grabbed Mr. Blumstein by the arm and pepper sprayed him in the face.

Two other officers held Mr. Blumstein down and one of the officers punched him in the face at least once with a closed first.

93.     On or about August 1, 2016, Baltimore County Police attempted to serve a bench warrant on Korryn Gaines. Ms. Gaines had a shotgun in the home. Six officers gave statements saying that they were not in Ms. Gaines' line of fire and never felt threatened. She was shot by a Baltimore County officer and her son suffered minor physical injuries.

94.     On or about March 15, 2019, civilian cell phone video shows Officer Becketts assisting in the arrest of a young Black male with at least three other officers.  As the officers are attempting to place the man under arrest, Officer Becketts can be seen punching the man in the head area at least once and kicking him in the head at least once before another officer pushes him away and tells him to "Back up!"

95.     On or about November 26, 2019 Baltimore County Officers received a call from a mother who was concerned about her son, Eric Sopp.  He was experiencing a mental health crisis and had left the home after drinking and was suicidal. Officers conducted a traffic stop on the unarmed man and ultimately, he was fatally shot on the side of I-83.

96.     On or about January 29, 2020, Baltimore County officers were dispatched to residential location following a report of property damage and a possible break-in.  The responding officer, Cpl. Brennan's conversation with the woman could be described as antagonistic and the woman ceased all communication with the officer.  The officer followed the woman to her grandmother's house to arrest her for disorderly conduct.  He then deployed his mace and taser in to the home before saying "You are so f*cked up now! Jesus f*cking Christ!" Officer Schmidt then runs up and immediately tackles the 76-year old grandmother to the ground.

97.     Baltimore County has failed to keep accurate records as to the number of false arrests by members of its police force.  This policy encourages arrests without probable cause and inhibits Baltimore County from critically evaluating the need for a change in training.

98.     The policies and customs of Baltimore County, as set forth herein, demonstrate a gross disregard for the constitutional rights of the public and the Plaintiffs.  At the time of the injury to the Plaintiffs, the Defendants were operating under unconstitutional customs, policies, and procedures.  These customs, policies, and procedures were a proximate cause of the injuries to Mr. Allotey and Ms. Weaver.

99.     Moreover, Defendants failed to properly train, prosecute, supervise, and discipline officers, including, but not limited to, all of the named Defendants, in the proper constitutional use of force as required by the United States Constitution and the Maryland Declaration of Rights.  The failure to properly train, prosecute, supervise, and discipline its officers demonstrated a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to the Plaintiffs.

100.    In addition, Defendant caused its officers and employees to believe that their use of excessive force would not be aggressively, honestly, and properly investigated.

101.    As a result, the individual Defendants have been caused and encouraged to believe that excessive force and illegal force could be used, and that it would be permitted without reproach.

102.    Defendant should have foreseen that such a policy would promote the use of illegal, unconstitutional, and excessive force, where such force is unreasonable.

103.    The execution of the unconstitutional policies or customs of Defendant County inflicted injury upon the Plaintiffs.

104.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant County and that stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

105.     The Plaintiffs further allege that all of their injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendant County, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count V (Maryland Declaration of Rights – Articles 24 & 26 Excessive Force) Versus the Individual Defendants

106.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

107.     The individual Defendants used excessive force against both Plaintiffs and in doing so, violated Plaintiffs' rights as protected under Articles 24 & 26 of the Maryland Declaration of Rights, specifically, Plaintiffs' due process rights and right to be free from excessive force.

108.    No force was authorized by law.

109.    The force used by the individual Defendants was unnecessary and objectively unreasonable.

110.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

**Count VI (Maryland Declaration of Rights – Articles 24 & 26 Malicious Prosecution)**
**<u>Versus the Individual Defendants</u>**

111.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

112.    Officer Becketts as well as the other defendant officers initiated and continued a criminal proceeding against the Mr. Allotey without proper justification.

113.    The officers knew that Mr. Allotey did not commit second degree assault, did not fail to obey a lawful order, and did not interfere with his arrest.

114.    Mr. Allotey attempted to protect Ms. Weaver by demanding that Officer Becketts stop grabbing her arm.  At no time did he assault or cause any bodily harm to any of the officers.

21

115.    It was not lawful for the officers to remove Mr. Allotey and Ms. Weaver from their own home without probable cause or legal justification.

116.    Mr. Allotey did not interfere with or resist arrest.  He was sprayed in the face with mace twice, punched, and kicked by the officers.  Mr. Allotey tried to use his hands to cover his head, face, and neck.

117.    The Office of the State's Attorney declined to prosecute.

118.    There was no probable cause for the Plaintiff's arrest, detention or the criminal case against him as stated otherwise herein.

119.    The prosecution of the Plaintiff in the criminal case was undertaken for a purpose other than bringing the Plaintiff to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.  Mr. Allotey was not burglarizing his own home and he did not assault or attempt to assault the officers.

120.    The Defendants caused the criminal prosecution of the Plaintiff by falsely asserting that he had committed various crimes the defendants knew that the laintiff did not commit.

121.    The Defendants' actions constituted malicious prosecution.

122.    The aforesaid acts of the defendants were undertaken deliberately.

123.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiff was caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages

22

from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiff.

124.    All of the Plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count VII (Maryland Declaration of Rights – Article 26 False Arrest & False Imprisonment) Versus the Individual Defendants

125.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

126.    Defendants deprived Plaintiffs Thomas Allotey and Caia Weaver of their rights under the Article 26 of the Maryland Declaration of Rights, namely freedom from unreasonable search and seizure and arrest without probable cause.

127.    At all times relevant hereto, Defendants Becketts, Ruiz, White, Wade, Z-Hensley and Pearson deliberately subjected the Plaintiffs to the deprivation of their rights by seizing Mr. Allotey and Ms. Weaver and removing both from their home and arresting Mr. Allotey without reasonable suspicion or probable cause to do so, thereby injuring the Plaintiffs and depriving them of their liberty.  This treatment violated Plaintiffs' right to be free from unreasonable search

and seizure and arrest without probable cause as protected by the Fourth Amendment to the United States Constitution.

128.    Mr. Allotey and Ms. Weaver were falsely arrested and imprisoned in that both were forcibly removed from their home and prevented from returning or otherwise going about their business for an unreasonable period under the circumstances.  Mr. Allotey was further falsely arrested and imprisoned when he was taken from the immediate vicinity of his home, criminally charged and jailed based on false charges.

129.    Mr. Allotey and Ms. Weaver sustained damages as a direct and proximate result of the unlawful search, seizure, false arrest and false imprisonment, as well as consciously experienced pain and suffering, humiliation, and embarrassment, all to their detriment.

130.    The complaining witness, Ms. Caba, informed Officer Ruiz that she saw carpet being installed in the home earlier that day.

131.    Officer Becketts was aware of this information before he positioned himself at the front door of Plaintiffs' home with his service weapon unholstered.

132.    A reasonable person in the officers' position would have realized that a new family had moved in to the unit, or, at the very least, that there was no probable cause or reasonable suspicion to believe a crime had been or was being committed.

133.    Additionally, Mr. Allotey and Ms. Weaver told the officers no less than five times that they had previously moved in to the home that day and the presence of their children made it evident that they were telling the truth, as did the totality of the circumstances, including the fact that the couple were appropriate ages to be parenting the children, there was no sign or physical evidence of a break-in, the couple came to the door immediately and opened it for officers, and the fact that officers had been told that carpet was being installed earlier that day.  Instead of

asking the Plaintiffs for a copy of their lease, which they would have readily provided, the officers physically removed Mr. Allotey and Ms. Weaver from the home.

134. The Defendant officers interfered with Mr. Allotey and Ms. Weaver's possessory property rights by physically removing them from the home without cause. Plaintiffs had a reasonable belief that they were not free to reenter their home.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## Count VIII (Maryland Common Law *Longtin* Claim – Articles 24 & 26 Excessive Force) Versus Baltimore County

135. Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

136. Defendant Baltimore County failed to adequately train, supervise, and discipline its officers against the use of excessive force and against arrest and imprisonment without probable cause. The failure to properly train, supervise, and discipline officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to Mr. Allotey and Ms. Weaver.

137. Baltimore County has also instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to use excessive force, to arrest without probable cause, and otherwise violate citizens' constitutional rights.

138. Arrest without probable cause and the use of excessive force occurs so frequently that it has become accepted manner by the Defendants and other employees of Baltimore County. This is a result of Baltimore County's failure to establish effective procedures, rules,

orders, guidelines and practices to ensure that excessive force will not be used and to ensure that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred.  As a result of this failure, there has been a regular pattern and practice of excessive force, failure to provide adequate medical care, cover-up, and failure to investigate. This pattern and practice has been manifested in other prior incidents involving county officers.

139.    The violation of citizen's constitutional rights to due process and equal protection of the laws occurs so frequently at the hands of the Defendant County and its employees and is a result of the County's failure to properly train its employees and to establish effective procedures, rules, orders, guidelines and practices to ensure that such violations will not be used and to ensure that allegations of constitutional violations be thoroughly investigated and appropriately punished when found to have occurred.

140.    Baltimore County has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

141.    Baltimore County lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior.

142.    On or about December 19, 2015, Zachary Blumstein became involved in a verbal altercation outside of the Green Turtle Restaurant in Towson, MD.  A man who didn't identify himself as a police officer grabbed Mr. Blumstein by the arm and pepper sprayed him in the face. Two other officers held Mr. Blumstein down and one of the officers punched him in the face at least once with a closed first.

143.    On or about August 1, 2016, Baltimore County Police attempted to serve a bench warrant on Korryn Gaines. Ms. Gaines had a shotgun in the home. Six officers gave statements

saying that they were not in Ms. Gaines' line of fire and never felt threatened. She was shot by a Baltimore County officer and her son suffered minor physical injuries.

144.     On or about March 15, 2019, civilian cell phone video shows Officer Becketts assisting in the arrest of a young Black male with at least three other officers.  As the officers are attempting to place the man under arrest, Officer Becketts can be seen punching the man in the head area at least once and kicking him in the head at least once before another officer pushes him away and tells him to "Back up!"

145.     On or about November 26, 2019 Baltimore County Officers received a call from a mother who was concerned about her son, Eric Sopp.  He was experiencing a mental health crisis and had left the home after drinking and was suicidal. Officers conducted a traffic stop on the unarmed man and ultimately, he was fatally shot on the side of I-83.

146.     On or about January 29, 2020, Baltimore County officers were dispatched to residential location following a report of property damage and a possible break-in.  The responding officer, Cpl. Brennan's conversation with the woman could be described as antagonistic and the woman ceased all communication with the officer.  The officer followed the woman to her grandmother's house to arrest her for disorderly conduct.  He then deployed his mace and taser in to the home before saying "You are so f*cked up now! Jesus f*cking Christ!" Officer Schmidt then runs up and immediately tackles the 76-year old grandmother to the ground.

147.     Baltimore County has failed to keep accurate records as to the number of false arrests by members of its police force.  This policy encourages arrests without probable cause and inhibits Baltimore County from critically evaluating the need for a change in training.

148.     The policies and customs of Baltimore County, as set forth herein, demonstrate a gross disregard for the constitutional rights of the public and the Plaintiffs.  At the time of the injury to the Plaintiffs, the Defendants were operating under unconstitutional customs, policies, and procedures.  These customs, policies, and procedures were a proximate cause of the injuries to Mr. Allotey and Ms. Weaver.

149.     Moreover, Defendants failed to properly train, prosecute, supervise, and discipline officers, including, but not limited to, all of the named Defendants, in the proper constitutional use of force as required by the United States Constitution and the Maryland Declaration of Rights.  The failure to properly train, prosecute, supervise, and discipline its officers demonstrated a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to the Plaintiffs.

150.     In addition, Defendant caused its officers and employees to believe that their use of excessive force would not be aggressively, honestly, and properly investigated.

151.     As a result, the individual Defendants have been caused and encouraged to believe that excessive force and illegal force could be used, and that it would be permitted without approach.

152.     Defendant should have foreseen that such a policy would promote the use of illegal, unconstitutional, and excessive force, where such force is unreasonable.

153.     The execution of the unconstitutional policies or customs of Defendant County inflicted injury upon the Plaintiffs.

154.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant County and that stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but

not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

155.    The Plaintiffs further allege that all of their injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendant County, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

**Count IX (Maryland Common Law Battery Claim) Versus the Individual Defendants**

156.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

157.    In physically dragging the Plaintiffs from their home, striking and macing Mr. Allotey, throwing him to the ground and handcuffing him, the individual Defendants touched the Plaintiffs in unwelcome ways.

158.    The unwelcome touching of the Plaintiffs was not privileged or otherwise warranted under the circumstances.

159.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant County and that stated elsewhere herein, Plaintiffs were caused to suffer and continue

to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

160.    The Plaintiffs further alleges that all of their injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendants, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count X (Maryland Common Law False Arrest & Imprisonment Claim) Versus the Individual Defendants

170.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

171.    The individual Defendants intentionally and unlawfully detained the Plaintiffs, thereby depriving them of their freedom of movement.

172.    Mr. Allotey was deprived of his liberty when he was pushed off of his front steps by Officer Becketts into the hands of the other officers.  Those officers along with Officer Becketts then proceeded to forcefully and painfully pull Mr. Allotey's hands behind his back

without legal cause or justification.  He was then pepper sprayed, placed in handcuffs, and escorted to a nearby police vehicle where he was then taken to the police station.

173.    Ms. Weaver was deprived of her liberty when she was forcibly removed from her home and not permitted to go about her business by the individual Defendants.

174.    The Plaintiffs did not consent to being detained by the officers.  In fact, Officer Becketts video depicts Mr. Allotey directing the officer to remove his hands from his person and that of Ms. Weaver.

175.    The Defendants arrested Mr. Allotey without legal cause or justification.  He was not trespassing in his own home, there was no probable cause or reasonable suspicion that he had committed a crime and he had not assaulted Officer Becketts as alleged.

176.    Defendants clearly intended to (and did) unlawfully take Mr. Allotey into custody and subject him to the Defendants' control.

177.    The individual defendants did not have the legal authority to arrest Mr. Allotey under the circumstances that existed at the time.

178.    The individual Defendants further restrained the liberty of Mr. Allotey by acts including, but not limited to, physically taking hold of his person, applying handcuffs to him, and arresting and held him in custody overnight.

179.    Mr. Allotey was conscious of and harmed by the unlawful restriction of his liberty.  Mr. Allotey knew that the officers were taking him to jail for reasons that were unjustified.

180.    Mr. Allotey was physically harmed when Officer Becketts pushed him off of his front step, when the other officers grabbed him and took him down to the ground twice, when

Officer Becketts sprayed him with mace twice, and when he was handcuffed and taken in to custody,

181.    The confinement of Mr. Allotey by the defendants was complete because there was no way to avoid his imprisonment.

182.    The defendants acted with the specific intent to deprive Mr. Allotey of his physical freedom and liberty and to imprison him.

183.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiffs were caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count XI (Maryland Common Law Malicious Prosecution Claim)
### Versus the Individual Defendants

184.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

185.    Officer Becketts as well as the other Defendant officers initiated and continued a criminal proceeding against Mr. Allotey without proper justification.

186.    The officers knew that Mr. Allotey did not commit second degree assault, did not fail to obey a lawful order, and did not interfere with his arrest.

187.    Mr. Allotey attempted to protect Ms. Weaver by demanding that Officer Becketts stop grabbing her arm.  At no time did he assault or cause any bodily harm to any of the officers.

188.    It was not lawful for the officers to remove Mr. Allotey and Ms. Weaver from their own home without probable cause or legal justification.

189.    Mr. Allotey did not interfere with or resist arrest.  He was sprayed in the face with mace twice, punched, and kicked by the officers.  Mr. Allotey tried to use his hands to cover his head, face, and neck.

190.    The Office of the State's Attorney declined to prosecute.

191.    There was no probable cause for the Plaintiff's arrest, detention or the criminal case against him as stated otherwise herein.

192.    The prosecution of the Plaintiff in the criminal case was undertaken for a purpose other than bringing the Plaintiff to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.  Mr. Allotey was not burglarizing his own home and he did not assault or attempt to assault the officers.

193.    The Defendants caused the criminal prosecution of the Plaintiff by falsely asserting that he had committed various crimes the defendants knew that the Plaintiff did not commit.

194.    The Defendants' actions constituted malicious prosecution.

195.    The aforesaid acts of the defendants were undertaken deliberately.

196.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiff was caused to suffer and continues

33

to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiff.

197.    All of the Plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count XII (Maryland Common Law Gross Negligence Claim) Versus the Individual Defendants

198.    Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

199.    Defendant officers acted recklessly with gross negligence and/or malice when they injured the Plaintiff while in their custody and control, thereby causing him to suffer physical injury.

200.    Defendant officers intentionally failed to carry out their duties as required by their own internal procedures when they forcibly removed Plaintiffs from their own home without justification and in front of their young children.

201.    The actions of the defendant Officers affected the lives of the Plaintiffs and the young children.  Ms. Weaver was terrified when she observed the officers pepper spray Mr. Allotey and force him down to the ground.  Mr. Allotey was in reasonable fear for his life because he had committed no crime and yet he was still treated as if he had.

202.    Defendant Officers knew or should have known that Plaintiff was not subject to any use of force, and that any force was excessive given the lack of probable cause for an arrest and Plaintiff's compliance.

203.    Defendant Officers acted with gross negligence and/or malice by intentionally and knowingly failing to render timely medical assistance to Plaintiff and by intentionally and knowingly assaulting and battering the Plaintiff without cause or legal justification.

204.    Defendant officers were acting with wanton and willful disregard of Plaintiff's rights as if such rights did not exist when they forcibly removed Plaintiffs from the home, pushed Mr. Allotey off of his steps, pepper sprayed him, punched and kicked him, pepper sprayed him a second time, and placed him under arrest.

205.    In the alternative, Defendant officers acted with malice when they purposefully assaulted the Plaintiff in a manner that was unreasonable, excessive, and unnecessary.

206.    Defendant officers demonstrated ill-will and an evil and wrongful motive against Plaintiff when they pushed him off of his front step, violently threw him to the ground, pepper spray him, kicked and punched him in the head and neck area, pepper sprayed him again, and placed him under arrest without probable cause or other legal justification.

207.     By taking part in the attack against the Plaintiff, Defendant officers demonstrated a purpose to deliberately and willfully injure Plaintiff.

208.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### Count XIII (Maryland Common Law Negligence Claim) Versus All Defendants

209.     Plaintiffs adopt and incorporate by reference the allegations contained in all other paragraphs herein with the same effect as if herein fully set forth.

210.     Defendants owed Plaintiffs the various constitutional and common law duties outlined elsewhere herein, as well as the duties of good care and safe keeping.

211.     Defendants breached their duties to the Plaintiffs by committing the misconduct outlined above.

212.     Defendants' breaches of their duties directly and proximately caused the Plaintiffs' injuries and damages outlined above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## JURY DEMAND

Plaintiffs demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

*/s/ Cary Hansel*

_____
Cary J. Hansel (Bar No. 14722)
2514 N. Charles Street
Baltimore, Maryland 21218
Phone:      301-461-1040
Facsimile: 443-451-8606
*Counsel for Plaintiffs*

37